■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO ALVAREZ, Appellant. [845 NYS2d 230]—

Judgment, Supreme Court, Bronx County (Edward M. Davidowitz, J.), rendered March 18, 2004, convicting defendant, after a jury trial, of manslaughter in the first degree and two counts of assault in the first degree, and sentencing him to consecutive terms of 25 years, 10 years and 10 years, respectively, unanimously affirmed.

---

Defendant is not entitled to a new trial based on the People's delay in disclosing contact or pedigree information concerning two possible sources of allegedly exculpatory testimony. In October 2002, several months after the indictment, the People disclosed two redacted police reports that are at issue on appeal. In one report, a witness informed a detective about his cryptic conversation with a person other than defendant, who told the witness that he "took care of" a certain "problem." It was apparently the witness's opinion that this other person (characterized by defendant on appeal as an alternative suspect) was referring to the instant homicide, and had admitted being the perpetrator. In the other report, a different witness gave a somewhat equivocal and self-contradictory description of the car used in the shooting that varied slightly from that of the car described by the People's trial witnesses and known to be driven by defendant.

The redacted report concerning the alleged alternative suspect contained the witness's name (which defendant asserts was too common to be of any use), and no other pedigree information. It also contained the name and phone number of the alternative suspect. The redacted report concerning the vehicle-description witness contained no identifying information. However, each report contained information of potential investigative value with regard to locating the witness to which it pertained.

Despite repeated requests for unredacted copies, the People did not disclose contact information for these witnesses until jury selection began in January 2004, which was approximately one week before opening statements. During trial, defense counsel advised the court that the contact information was stale and that neither witness could be located. The defense had learned the true name of the alleged alternative suspect, but could not locate him either.

There is no basis for reversal under *Brady v Maryland* (373 US 83 [1963]). Initially, defense counsel was provided with the redacted reports a year and half before trial, and they contained sufficient information to allow the defense to conduct an investigation of the relevant allegations. The fact that the witnesses' identities and addresses were redacted from those reports did not constitute a suppression of the substance of the witnesses' statements. Further, there is no reason to believe that earlier disclosure of the information redacted from the reports would have resulted in either witness being available to testify for defendant (*see People v Buie*, 289 AD2d 140 [2001], *lv denied* 98 NY2d 695 [2002]; *People v Watkins*, 286 AD2d 515 [2001], *lv denied* 97 NY2d 643 [2001]; *People v Perry*, 266 AD2d

151, 153 [1999], *lv denied* 95 NY2d 856 [2000]). Furthermore, defendant has not established that either witness, if called, would have provided material exculpatory testimony. The potential exculpatory value of the testimony of the "alternative-suspect-confession" witness is uncertain, because there is no indication of the basis for the witness's apparent conclusion that the alternative suspect was referring to the incident at issue. Furthermore, there was evidence that there were two participants in the crime, and, under the circumstances of the case, the "alternative suspect" could have simply been defendant's accomplice. The exculpatory value of the vehicle-description witness's testimony would have been very limited, since, as previously noted, the description in the police report was equivocal and not at significant variance from the People's evidence.

Similarly, defendant was not entitled to introduce the police reports at trial as a *Brady* remedy. Furthermore, he was not entitled to do so as a matter of due process (*see Chambers v Mississippi*, 410 US 284 [1973]; *People v Robinson*, 89 NY2d 648, 654 [1997]). Each report was hearsay, and neither was admissible under any recognized hearsay exception. Even if the alleged alternative suspect could be viewed as having made a declaration against his penal interest, that declaration was made, in turn, to another hearsay declarant. For the reasons previously noted, each report lacked sufficient indicia of reliability, and, even if deemed reliable, had minimal exculpatory value (*see e.g. People v Burns*, 18 AD3d 397 [2005], *affd* 6 NY3d 793 [2006]).

The court properly exercised its discretion in declining to permit defendant to cross-examine a detective about the contents of the report concerning the alleged alternative suspect (which had been prepared by a nontestifying detective), and there was no violation of defendant's right of confrontation or to a fair trial (*see Delaware v Van Arsdall*, 475 US 673, 678-679 [1986]). Although defendant claims he was not offering this information for its truth, but to show the inadequacy of the police investigation into a possible alternative suspect, it contained multiple layers of hearsay, and depended, for its relevancy, on at least some level being true (*see People v Reynoso*, 73 NY2d 816, 819 [1988]). In any event, the proposed line of inquiry was not critical to defendant's defense.

To the extent that defendant is claiming the court should have permitted cross-examination of the detective about the police report concerning the description of the car, or is challenging the prosecutor's summation, such claims are unpreserved

and we decline to review them in the interest of justice. Were we to review these claims, we would find them to be without merit.

Defendant's arguments concerning the court's jury instructions, including any constitutional claims, are without merit (*see People v Farmer*, 90 AD2d 106, 113 [1982]).

Finally, the court's instructions on transferred intent did not require concurrent sentences on the convictions for manslaughter in the first degree and two counts of assault in the first degree, as each firing of the gun constituted a separate act and the material elements of the three crimes did not overlap (*see* Penal Law § 70.25 [2]; *People v Brathwaite*, 63 NY2d 839, 843 [1984]; *People v Rivera*, 262 AD2d 31 [1999], *lv denied* 93 NY2d 1025 [1999]; *People v Saulters*, 255 AD2d 896 [1998], *lv denied* 92 NY2d 1038 [1998]; *People v Reyes*, 239 AD2d 524 [1997], *lv denied* 90 NY2d 909 [1997]). Concur—Tom, J.P., Mazzarelli, Sullivan, Gonzalez and McGuire, JJ.